870 F.2d 1450
 111 Lab.Cas. P 11,052
 UNITED STATES of America and Ann McLaughlin, Secretary of
Labor, United States Department of Labor,
Plaintiff-Appellant,
v.
INTERNATIONAL UNION OF PETROLEUM AND INDUSTRIAL WORKERS,
AFL-CIO, Defendant-Appellee.
 No. 88-6023.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 10, 1989.
Decided March 21, 1989.
 
 Susan Webman, U.S. Dept. of Labor, Washington, D.C., for plaintiff-appellant.
 Laurence D. Steinsapir, with Dolly M. Gee on the brief, Schwartz, Steinsapir, Dohrmann & Sommers, Los Angeles, Cal., for defendant-appellee.
 Laurence Gold and Walter Kamiat, brief of the American Federation of Labor and Congress of Indus. Organizations ("AFL-CIO"), Washington, D.C., as amicus curiae in support of defendant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before FLETCHER, PREGERSON and LEAVY, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 The District Court partially enforced the subpoena duces tecum which appellant Department of Labor (hereinafter "Department" or "DOL") issued to appellee International Union of Petroleum and Industrial Workers (hereinafter "IUPIW" or "International"). The subpoena sought financial data and election records of local unions affiliated with IUPIW. DOL had issued the subpoena as part of its investigation of the union's 1987 elections; that inquiry was mandated by section 402 of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. section 482, which requires the Secretary of Labor to investigate union elections upon receipt of a complaint by individual union members.[1] The District Court ordered the International to produce the financial data, but ruled that the Department had not shown that the International "controlled" the locals' election records, and therefore refused to enforce that part of the subpoena.
 
 
 2
 DOL appeals from that part of the District Court's decision denying enforcement of the subpoena that requested the International to produce the locals' delegate election records. The Department contends that the International does indeed "control" the locals' delegate election records, thereby rendering full subpoena enforcement appropriate.[2]
 
 STANDARD OF REVIEW
 
 3
 The District Court's decision to deny enforcement of part of the administrative subpoena will be reversed only if the panel finds that that court abused its discretion by so ruling. N.L.R.B. v. G.H.R. Energy Corp., 707 F.2d 110, 112 (5th Cir.1982).
 
 DISCUSSION
 
 4
 The party to whom a subpoena for records is issued must produce only those records which are in his "possession, custody or control." Fed.R.Civ.P. 34(a).[3] DOL does not contend that the International maintained possession or custody of the recalcitrant locals' delegate election records; therefore, the only issue is whether the International had control over these records such that it must produce them in compliance with the administrative subpoena. Control is defined as the legal right to obtain documents upon demand. Searock v. Stripling, 736 F.2d 650, 653 (11th Cir.1984). The party seeking production of the documents (here, DOL) bears the burden of proving that the opposing party has such control. Norman v. Young, 422 F.2d 470, 472-73 (10th Cir.1970).
 
 
 5
 The LMRDA requires the International to preserve for one year the delegates' credentials and all other convention records pertaining to the election of officers. LMRDA Sec. 401(f), 29 U.S.C. Sec. 481(f). But local union delegates are not union officers. LMRDA Sec. 3(n), 29 U.S.C. Sec. 402(n); 29 C.F.R. Sec. 452.22. Local delegate election records must be preserved, but the Act does not state whether the officers of the local or of the International have the right or responsibility to do so, in the absence of an express provision in the union constitution or bylaws. LMRDA Sec. 401(e), 29 U.S.C. Sec. 481(e). In the present case, IUPIW asserts that its longstanding practice has been for the International Secretary-Treasurer to preserve election records relating to the election of International officers, while each local's Secretary-Treasurer holds the records of the local's delegate elections.
 
 
 6
 A corporation must produce documents possessed by a subsidiary that the parent corporation owns or wholly controls. See, e.g. Hubbard v. Rubbermaid, Inc., 78 F.R.D. 631 (D.Md.1978); In re Investigation of World Arrangements, Etc., 13 F.R.D. 280 (D.D.C.1952); see also Advance Labor Service, Inc. v. Hartford Accident & Indem. Co., 60 F.R.D. 632 (N.D.Ill.1973). Extending this principle to cover the relationship between an International union and its locals, however, is not consistent with federal labor law. Because the locals and the International are separate "labor organizations" within the meaning of both the National Labor Relations Act, 29 U.S.C. Sec. 152(5), and the LMRDA, 29 U.S.C. Sec. 402(i), their relationship is governed by the IUPIW constitution, which is a "contract between labor organizations." United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry v. Local 334, 452 U.S. 615, 619, 101 S.Ct. 2546, 2548, 69 L.Ed.2d 280 (1981). We must look to that document and its interpretation to resolve the issue of control.
 
 
 7
 A union's construction of its own constitution is entitled to a certain measure of deference. See Lucas v. Bechtel Corp., 800 F.2d 839, 850 (9th Cir.1986) ("when union officials have offered a reasonable construction of the constitution, and no bad faith on their part has been shown, the courts should not disturb the union officials' interpretation.") (quoting Stelling v. International Brotherhood of Electrical Workers, Local Union Number 1547, 587 F.2d 1379, 1389 (9th Cir.1978), cert. denied, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979)).[4] In general, judicial interference in intra-union affairs should be undertaken only with great reluctance, Stelling, 587 F.2d at 1387, for "in ... enforcing statutory standards, great care should be taken not to undermine union self-government." S.Rep. No. 187, 86th Cong., 1st Sess. 5 (1959) at 7, reprinted at I N.L.R.B., Leg.History of LMRDA, at 402-03.
 
 
 8
 No section of the IUPIW constitution expressly gives the International the right to obtain locals' delegate election records upon demand. DOL urges us to read several disparate provisions of the constitution together, believing this will lead us to conclude that the locals are mere subsidiaries of the International and that the International does enjoy the right to demand election documents.
 
 
 9
 None of these sections seem intended to hinder locals' right and ability to maintain their own delegate election records. They include, rather, organizational provisions, and rules designed to ensure locals' compliance with existing federal law; they do not seem necessarily to imply an accompanying element of control. Locals must submit to the International, and the International has a right to inspect, only those documents mentioned in the union constitution. Art. VI, Sec. 4.
 
 
 10
 The only constitutionally-mandated means by which the International can gain access to local records upon demand is in the event of a dissolution of the local, wherein "all money, books, records, and other union property shall remain property of the union and shall be surrendered upon demand to the International Secretary-Treasurer." Art. XIV, Sec. 3. The Department argues that this provision establishes that locals' records are union property, and can be taken upon demand. We do not believe, however, that this provision gives the International the unfettered right to demand that an active local turn over its records to the International, aside from those records mentioned in the constitution.
 
 
 11
 The Department contends that the International can enforce its demand for local election records by either removing recalcitrant local officers (Art. XIII, Sec. 1), imposing a trusteeship on the local to ensure democratic procedures (Art. VII, Sec. 3), or dissolving the chartered locals (Art. VI, Sec. 2) and revoking charters of affiliated locals (Art. VIII, Sec. 1).
 
 
 12
 The union constitution does not, however, contemplate the use of any of these drastic measures simply to obtain locals' delegate election records. The purpose of the sections sanctioning these measures clearly was not to enable the International to obtain records that the local rightfully wished to retain. First, the right to remove a union officer is restricted to instances in which (s)he willfully violates the union constitution or commits an act detrimental to workers in the petroleum and allied industries. Art. XIII, Sec. 1. Second, a trusteeship may be imposed only for the purposes delineated at 29 U.S.C. section 462.[5] Providing the International access to locals' election records is not one such purpose. Indeed, the entire section is geared toward maintaining local autonomy in the face of union attempts to subordinate it. See also Retail Clerks Union, Local 770 v. Retail Clerks International Association, 479 F.2d 54, 55 (9th Cir.1973) ("the imposition of a trusteeship is an extraordinary intrusion into the affairs of a local union.").
 
 
 13
 The International may authorize dissolution of a local "as conditions and policy of the International warrants." Art. VI, Sec. 2. Affiliated locals can have their charters revoked only if they fail "to comply with any decision after a full hearing by the International Executive Board." Art. VIII, Sec. 1. We can discern in these two sections no intent to authorize the International to use dissolution or charter revocation as a means to obtain locals' records.
 
 
 14
 The Department's final argument is that the International union has "control" of the locals' election records by virtue of its "inherent relationship" to the locals, which are, DOL contends, mere subdivisions of the International, and of inferior status. DOL's authority for this theory is scant and unpersuasive.
 
 
 15
 Control must be firmly placed in reality, First National City Bank of New York v. I.R.S., 271 F.2d 616, 618 (2nd Cir.1959), cert. denied, 361 U.S. 948, 80 S.Ct. 402, 4 L.Ed.2d 381 (1960), not in an esoteric concept such as "inherent relationship." We do not look to whether the International theoretically controlled the local; rather, we inquire whether actual control existed. Shimman v. Frank, 625 F.2d 80, 98 n. 36 (6th Cir.1980). See also Boss v. International Brotherhood of Boilermakers, 567 F.Supp. 845, 847 (N.D.N.Y.1983), aff'd, 742 F.2d 1446 (2nd Cir.1983), cert. denied, 469 U.S. 819, 105 S.Ct. 89, 83 L.Ed.2d 36 (1984). The federal statutes do not give the International actual control. Nor do the union's constitution or its election rules give the International such control. Though the International admits its potential liability for defective delegate elections and its power to impose a prospective remedy on the locals, we cannot equate such liability with control over local election records.
 
 
 16
 The Department's "inherent relationship" argument also runs contrary to the principles that dictate union governance. The Supreme Court has stated that union constitutions "prescribe the legal relationship and the rights and obligations between the parent and affiliated locals." United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry v. Local 334, 452 U.S. 615, 624, 101 S.Ct. 2546, 2551, 69 L.Ed.2d 280 (1981).
 
 
 17
 Additionally, international and local unions are frequently in adversarial positions. They often engage in lawsuits, internal protests, and complaint proceedings against one another. That this pattern is common among international labor unions, and that there is a vast array of issues of contention between them and their locals suggests that the concept of an "inherent relationship" is an illusory one, and we decline to recognize it today.
 
 
 18
 Finally, the Department can obtain the records it seeks directly from the local unions. The International produced all subpoenaed documents in its actual possession or control, and even suggested to DOL that it could obtain the others directly from the locals. Yet the Department never asked the locals for these records.
 
 
 19
 We conclude that the union constitution does not grant the International the right to take possession of locals' election records on demand, and that no "inherent relationship" exists between an international union and its locals such that the International could be deemed to "control" the documents. These conclusions lead us to hold that the District Court did not abuse its discretion in denying full enforcement of the subpoena. Therefore, we AFFIRM the District Court's findings and order.
 
 
 
 [1]
 The Secretary had authority under two different sections of the LMRDA to initiate an investigation: sections 402 and 601 of the Act, 29 U.S.C. Secs. 482, 521. The authority under section 601 is more general, and does not require prior receipt of a complaint. Under section 402, the Secretary must begin an investigation upon receipt of a timely complaint filed by a union member who has exhausted internal union remedies. Here, the Department relied on section 601 so that its enforcement action would not be untimely, as it would have been under section 402, which requires the Secretary to file a civil action within sixty days of receiving a complaint, if at all. (ER at 108-09)
 
 
 [2]
 In the interim between the District Court's ruling and the present appeal, DOL received another similar complaint concerning this election, and, again pursuant to LMRDA section 402, 29 U.S.C. section 482, filed suit in District Court to overturn the election. The union now contends that, by virtue of the filing of this latter suit, the subpoena enforcement action is moot. The International argued that the administrative subpoena's sole purpose is to aid the Secretary in gathering evidence to determine if a suit should be filed to overturn the election, and that once suit is filed, the need for the subpoenaed records evaporates, mooting DOL's subpoena enforcement action. However, DOL's arguments that (1) the filing of a lawsuit is not necessarily conclusive that its investigation is complete, especially when the records sought are so vital to its case against the union; and (2) sections 402 and 601 were intended to be read independently are compelling, and since the question of whether the issue before us is "capable of repetition, yet evading review," Southern Pacific Terminal Co. v. I.C.C., 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911), only arises once an initial determination of mootness is made, DeFunis v. Odegaard, 416 U.S. 312, 319, 94 S.Ct. 1704, 1707, 40 L.Ed.2d 164 (1974), we need not answer it here. We therefore hold that this case is not moot, and move on to the merits
 
 
 [3]
 Fed.R.Civ.P. 81(a)(3) states that the Federal Rules apply to proceedings to compel the production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States
 
 
 [4]
 Of course, such deference is limited to union interpretations that are both reasonable and consistent with the law. See 29 C.F.R. Secs. 452.2, 452.3
 
 
 [5]
 These purposes are identical to those enumerated in IUPIW's constitution, Art. VII, Sec. 3, which include correcting corruption and/or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objectives of the union