PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: Grand Jury Subpoena: JOHN
DOE, No. 05GJ1318

UNITED STATES OF AMERICA,
            *Movant-Appellee,*

                v.                                 No. 06-1572

UNDER SEAL,
            *Intervenor-Appellant.*

UNDER SEAL,
            *Amicus Curiae.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
T. S. Ellis, III, District Judge.
(1:05-dm-00401-TSE)

Argued: September 18, 2006

Decided: March 7, 2007

Opinion Unsealed: October 14, 2009

Before KING, GREGORY, and SHEDD, Circuit Judges.

Affirmed by published opinion. Judge King wrote the majority opinion, in which Judge Shedd joined. Judge Gregory wrote an opinion concurring in the judgment.

**COUNSEL**

**ARGUED:** Amy Berman Jackson, TROUT CACHERIS, P.L.L.C., Washington, D.C., for Appellant. Patty Merkamp Stemler, UNITED STATES DEPARTMENT OF JUSTICE, Criminal Division, Appellate Section, Washington, D.C., for Appellee. **ON BRIEF:** Robert P. Trout, Gloria B. Solomon, TROUT CACHERIS, P.L.L.C., Washington, D.C., for Appellant. Jeffrey P. Singdahlsen, UNITED STATES DEPARTMENT OF JUSTICE, Criminal Division, Appellate Section, Washington, D.C.; Kenneth E. Melson, Acting United States Attorney, Mark D. Lytle, Rebeca H. Bellows, Assistant United States Attorney, Michael K. Atkinson, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. Geraldine R. Gennet, General Counsel, Kerry W. Kircher, Deputy General Counsel, David Plotinsky, Assistant Counsel, U.S. HOUSE OF REPRESENTATIVES, Office of General Counsel, Washington, D.C., for Amicus Curiae.

---

**OPINION**

KING, Circuit Judge:

This appeal is taken by a sitting Congressman (the "Congressman"), who challenges the district court's refusal to quash a grand jury subpoena duces tecum seeking documents from his Chief of Staff ("Doe").[1] *See In re Grand Jury Sub-*

---

[1]The files relating to this appeal have been sealed in both the district court and this Court, in order to protect the confidentiality of grand jury proceedings. *See* Fed. R. Crim. P. 6(e). The district court's proceedings were closed to the public and its decision was filed under seal. The oral argument in this Court was conducted in camera on September 18, 2006. Consistent with the confidentiality interests of these proceedings, we do not refer to the Congressman by name, we refer to his Chief of Staff simply as "Doe," and we do not otherwise use the names of any individuals.

*poena Duces Tecum, John Doe No. 05GJ1318* (Under Seal), No. 1:05dm401 (E.D. Va. May 4, 2006) (the "Order").[2] The Congressman contends that the court erred in declining to recognize his Fifth Amendment privilege against production of the requested documents by Doe, and in entering its Order compelling Doe to produce subpoenaed documents to the grand jury. In support thereof, the Congressman maintains that at all relevant times he retained possession of the documents at issue, and that he is entitled to interpose his Fifth Amendment privilege to bar their production. As explained below, we affirm the district court.

## I.

### A.

The facts of this case were largely uncontested, and all pertinent factual disputes were resolved by the district court.[3] On August 3, 2005, two separate grand jury subpoenas duces tecum were issued in the Eastern District of Virginia, each seeking records from the office of the Congressman. The first of the two subpoenas, directed to "[the Congressman], in his official capacity as Custodian of Records for [the Congressman]'s Congressional Office" was served on the Congressman himself (the "Custodian Subpoena"). The second subpoena was directed to his Chief of Staff, as "[Doe], Chief

---

Under the circumstances, we also exercise our discretion and seal this opinion and Judge Gregory's separate opinion. We defer in the first instance to the district court, in its supervisory capacity for the grand jury proceedings, on when these opinions (or any part thereof) should be unsealed and made public.

[2]The Order is found at J.A. 717-18. (Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

[3]The relevant facts spelled out herein are largely those found and relied upon by the district court. They have also been derived, inter alia, from the Stipulated Facts, Doe's grand jury testimony, and two sworn declarations made by Doe.

of Staff, [the Congressman]'s Congressional Office" and was served on Doe (the "Doe Subpoena").[4] These subpoenas were materially identical and requested production of ten categories of documents generated or retained by the Congressman's office relating to his official duties. After the subpoenas were served, Doe and two other staff members gathered the documents that they believed responsive to the Custodian Subpoena.[5] They did so at the Congressman's direction, as communicated to them through his private counsel and the General Counsel of the House of Representatives ("House Counsel").

## B.

On August 23, 2005, House Counsel represented to the United States Attorney that the potentially responsive documents were being identified and gathered by the Congressman's staff (the "Documents").[6] In response, the United States

---

[4]The Custodian Subpoena is found at J.A. 275-94, and the Doe Subpoena is found at J.A. 241-60.

[5]As explained *infra* Part I.E, Doe maintains that she identified and gathered the Documents in response to the Custodian Subpoena only, and not in response to the Doe Subpoena, which makes a request materially identical to that of the Custodian Subpoena. Doe's mind-frame in this regard is not, in our view, legally significant to our analysis of the issues presented here. As explained below, the issues in this appeal largely turn on whether Doe had sufficient possession of the Documents to warrant the district court's compulsion ruling, and do not turn on which of the two subpoenas Doe believed she was satisfying. *See Couch v. United States*, 409 U.S. 322, 330 n.12 (1973) ("[I]t is possession of papers sought by the government . . . which sets the stage for exercise of the governmental compulsion which it is the purpose of the [Fifth Amendment] privilege to prohibit."); *United States v. Int'l Union of Petrol. & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989) ("The party to whom a subpoena for records is issued must produce . . . those records which are in his possession, custody, or control." (internal quotation marks omitted)).

[6]We refer herein to the Movant-Appellee, the United States of America, as the "United States Attorney," and that term refers collectively to the investigators, attorneys, and others representing the prosecution and the grand jury in this matter.

Attorney expressed concern to House Counsel about possible copying of the Documents and emphasized the necessity of maintaining their integrity and security. The parties disagree on whether the United States Attorney requested that the Congressman not be provided with the "original" set of Documents,[7] but they agree that the United States Attorney suggested that his security and integrity concern could be alleviated by "Bates-numbering" the Documents prior to any of them being provided to the Congressman's counsel. *See* Stipulated Facts ¶ 3.[8] House Counsel rejected that course of action and made a single copy of the Documents, which was delivered to the Congressman's counsel. *See id.* ¶¶ 3, 4.

On or about September 16, 2005, the original set of Documents was placed in a locked cabinet in the Chief of Staff's office, because Doe was the only member of the staff — other than the Congressman himself — with an office cabinet that could be locked and secured.[9] House Counsel then notified the United States Attorney that the Documents had been secured and were being maintained in Doe's locked cabinet. On September 28, 2005, the United States Attorney interviewed Doe on that point, and she confirmed that the Documents had been placed in the locked cabinet in the Chief of Staff's office. At the conclusion of the interview, Doe was served with a subpoena to testify before the grand jury, returnable on October 6, 2005 (the "Testimonial Subpoena").[10]

---

[7]In referring to the "original" set of Documents, we mean the specific documents initially identified and gathered by Doe and the staff members who assisted in that effort.

[8]The Stipulated Facts, filed in the district court on December 22, 2005, are found at J.A. 517-19.

[9]Doe described to the grand jury the placement of the Documents in her locked cabinet, stating: "I'm the only person in the office with — I mean in addition to the congressman, I'm sort of a semiprivate office and I have a locked cabinet. We put [the Documents] in that cabinet." J.A. 171.

[10]The Testimonial Subpoena, served on Doe on September 28, 2005, directed that she appear and testify before the grand jury on October 6, 2005. The Testimonial Subpoena is to be distinguished from the Doe Subpoena, which directed production of the Documents to the grand jury, and which underlies this appeal. The Testimonial Subpoena is found at J.A. 262-63.

C.

On October 6, 2005, Doe testified before the grand jury pursuant to the Testimonial Subpoena of September 27, 2005. During her testimony, she described her responsibilities as Chief of Staff as "[o]verall administrative responsibility for the office, human resource responsibility, and sort of overall direction for legislative strategy." J.A. 164. Doe was questioned about her role in identifying, gathering, and securing the Documents, and she indicated that, as Chief of Staff, she had been tasked with the responsibility of identifying and gathering them. In so doing, she ascertained that two staff members, in addition to herself, had material knowledge of the Documents. Those staff members — a legislative assistant ("Staff Member 2") and a Deputy Chief of Staff, described as an office manager and executive secretary ("Staff Member 3") — were thus assigned to assist Doe in identifying and gathering the Documents. The Documents were identified and gathered from three primary sources: (1) the Congressman's private office, computer, and email account (the "Congressman's Materials"); (2) Doe's files and computers (the "Doe Materials"); and (3) the files and computers of Staff Members 2 and 3 (the "Staff Materials"). The materials from these sources were identified, gathered, and placed in the locked cabinet in the Chief of Staff's office. Doe and Staff Member 3 were the only persons who knew where Doe kept the key to the locked cabinet, and they were thus the only persons with access to the Documents. The Congressman had no role in determining whether any of the Documents were responsive to either the Custodian Subpoena or the Doe Subpoena. He did not participate in identifying, gathering, copying, or securing the Documents, and none of the materials examined or reviewed included his private papers. According to Doe, the materials reviewed, as well as the Documents themselves, are official documents of the congressional office.

D.

On October 21, 2005, House Counsel, representing Doe in her official capacity, notified the United States Attorney that

she objected to the Doe Subpoena's request for documents from the Congressman's office. This objection rested on two grounds: (1) the Documents sought by the Doe Subpoena belonged to the Congressman; and (2) Doe was not the custodian of the Congressman's records and had no authority to release or produce them to the grand jury. As a result, the United States Attorney, on November 14, 2005, filed a motion in the district court seeking a compulsion order on the Doe Subpoena (the "Motion to Compel"). That same day, House Counsel informed the United States Attorney that Doe would be leaving her employment with the Congressman four days hence, on November 18, 2005. House Counsel and the United States Attorney then discussed whether the Documents — already secured in Doe's locked cabinet — should be moved because of her imminent departure. House Counsel took the position that Doe should simply transfer the key to the locked cabinet to Staff Member 3, without removing the Documents. In making this request, House Counsel maintained that (1) the Documents were responsive to the Custodian Subpoena and not the Doe Subpoena; (2) Doe's involvement with the Documents was "minimal," as Staff Members 2 and 3 had identified and gathered most of them; (3) the Documents had been locked in Doe's cabinet only "as a courtesy response" to the United States Attorney's integrity and security concerns; and (4) even if Doe was the custodian of the Congressman's records, her status as such would cease when her employment as the Congressman's Chief of Staff terminated.

On November 17, 2005, the United States Attorney filed in the district court a "Motion to Preliminarily Secure Documents Responsive to Grand Jury Subpoena Pending Judicial Determination" (the "Motion to Secure"), seeking to compel the transfer of the Documents to the custody of the court's Clerk prior to Doe's departure (the next day) from the Congressman's office. Doe promptly filed a memorandum in opposition to the Motion to Secure, and the court conducted an immediate hearing on the matter. At this hearing, Doe and the United States Attorney agreed: (1) the Documents would

be transferred to and held by House Counsel; and (2) Doe and House Counsel would not contend, in response to the pending Motion to Compel, that Doe's possessory interest in the Documents, if any, was in any way altered by her departure from the Congressman's staff or by transfer of the Documents to House Counsel. Premised on this agreement, the court denied the Motion to Secure as moot. The Documents were then transferred from Doe's locked cabinet to House Counsel's office, subject to the foregoing agreement, as confirmed by the court's Order of November 17, 2005.[11]

E.

On December 2, 2005, Doe filed a memorandum in opposition to the Motion to Compel. With her opposition memorandum, Doe filed a Declaration stating that

> it has always been my understanding that all official records in [the Congressman's] office belong solely to him; that he is the sole custodian of records for those records and has exclusive control of them; and that neither I nor any other member of [the Congressman]'s staff were authorized to make any decisions regarding the disposition of those records.

J.A. 238. On December 9, 2005, the United States Attorney filed a reply to Doe's opposition memorandum, and Doe filed a prompt surreply. On December 16, 2005, the district court conducted a hearing on the Motion to Compel, at which Doe and the United States Attorney agreed to promptly file their Stipulated Facts, as well as supplemental memoranda (which were filed on December 22, 2005). Doe's supplemental mem-

---

[11]The court's November 17, 2005 Order also provided that House Counsel would maintain the security and integrity of the Documents. *See* J.A. 146. Pursuant to the agreement confirmed by that Order, we proceed as though Doe is yet employed as the Congressman's Chief of Staff and the Documents remain in the locked cabinet in her office.

orandum was supported by her Second Declaration, in which she stated that her role in the document identification and gathering process was limited to searching her own office and computer for documents potentially responsive to the Custodian Subpoena, and that she understood the reason for storing the Documents in her locked cabinet to be the United States Attorney's integrity and security concern. Doe stated that she did not personally review the Documents, except for the Doe Materials she personally gathered from the Chief of Staff's office and computer. The Second Declaration also asserted that Doe had never searched for documents potentially responsive to the Doe Subpoena.[12]

Following another hearing in the district court on January 6, 2006, the Congressman, who had been authorized to intervene in the Motion to Compel proceedings, spelled out his objections to the Doe Subpoena and moved to quash it (the "Motion to Quash"). The district court issued its decision on both the Motion to Quash and the Motion to Compel on May 4, 2006. *See* Order and accompanying Memorandum Opinion (the "Opinion").[13] The Order provides as follows:

> It is ORDERED that the [Motion to Compel] is GRANTED IN PART AND DENIED IN PART. It is DENIED insofar as it seeks production of documents found in [the Congressman]'s private office, computer, or email account. It is GRANTED in all other respects. It is further ORDERED that [the Motion to Quash] is GRANTED IN PART AND DENIED IN PART. It is GRANTED insofar as it

---

[12]As explained *supra* note 5, Doe's contention that she identified and gathered documents in response to the Custodian Subpoena only, and not the Doe Subpoena, is neither legally nor factually significant here. The two subpoenas are materially identical and, according to the Congressman's Motion to Quash the Doe Subpoena, filed January 9, 2006, the two subpoenas seek "precisely the same documents." Supplemental J.A. 20.

[13]The Opinion is found at J.A. 696-716.

seeks production of documents found in [the Con-gressman]'s private office, computer, or email account. It is DENIED in all other respects.

Order 1. Thus, the court ordered Doe to produce to the grand jury the Doe Materials and the Staff Materials, and the court quashed the Doe Subpoena to the extent that it sought produc-tion of the Congressman's Materials. *See id.* In its accompa-nying Opinion, the court explained its ruling, stating:

> [Although the Congressman]'s Fifth Amendment privilege requires that the subpoena issued to him in his capacity as custodian of records [the Custodian Subpoena] be quashed, his Fifth Amendment privi-lege does not permit [him] to quash the subpoena issued to Doe [the Doe Subpoena] except with respect to the documents retrieved from his private office, computer, or e-mail account.

Opinion 21. In declining to fully quash the Doe Subpoena, and in granting the Motion to Compel in part, the court made certain pertinent findings of fact. Significantly, it found that Doe and Staff Members 2 and 3 individually had actual pos-session of the Doe Materials and the Staff Materials, and that, consequently, the Congressman did not retain sole and exclu-sive authority over those materials. *See id.* at 18. The court found that, as Chief of Staff, Doe had the authority to demand the Staff Materials from Staff Members 2 and 3 at any time. *See id.* at 14-15. Additionally, the court found that the United States Attorney had not requested that Doe take possession of the Documents after they were identified and gathered, and that he merely assented to House Counsel's decision to have the Documents locked in the cabinet in the Chief of Staff's office. *See id.* at 15 n.18. The court ruled that the nature of Doe's possession and control of the Doe Materials and the Staff Materials triggered her obligation to produce them to the grand jury pursuant to the Doe Subpoena, and that her obliga-

tion in that respect was not trumped by the Congressman's Fifth Amendment act of production privilege. *See id.* at 14-15.

The Congressman has appealed from that aspect of the May 4, 2006 Order declining to fully quash the Doe Subpoena, and we have authorized Doe to participate in the appeal as amicus curiae. We possess jurisdiction in this appeal — a point not contested by the United States Attorney — and we will briefly explain the basis thereof. As a general proposition, a person served with a subpoena is not entitled to appeal the denial of a motion to quash without first resisting the subpoena and being held in contempt. *See United States v. Jones*, 696 F.2d 1069, 1071 (4th Cir. 1982). In these circumstances, however, where the Congressman challenges only the court's ruling on the Doe Subpoena, the general rule has no application. We are thus obliged to recognize the Congressman's right to contest on appeal the propriety of Doe being compelled to comply in part with the Doe Subpoena, in the face of his Fifth Amendment privilege claim. *See id.* ("[W]hen the one who files the motion to quash is not the person to whom the subpoena is directed and the movant claims that production of the subpoenaed documents would violate his fifth amendment privilege against self-incrimination, the movant is permitted an immediate appeal."). In these circumstances, we consider and dispose of the Congressman's appeal on its merits.

## II.

We review for abuse of discretion a district court's denial of a motion to quash a grand jury subpoena. *See In re Grand Jury Subpoena (Torf)*, 350 F.3d 1010, 1014 (9th Cir. 2003). In conducting such a review, we assess de novo the district court's rulings of law, and we examine its findings of fact for clear error. *See In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 854 (9th Cir. 1991) ("We review the district court's factual determinations under the clearly erroneous rule, and review its decision to quash the grand jury subpoenas for abuse of discretion." (internal quotation marks omit-

ted)); *cf. In re Grand Jury Subpoena*, 341 F.3d 331, 334 (4th Cir. 2003) (reviewing for clear error findings of fact underlying attorney-client privilege claim on motion to quash grand jury subpoena). More specifically, we review for clear error any findings of fact underlying a district court's ruling on the applicability of the Fifth Amendment privilege. *See United States v. Doe*, 465 U.S. 605, 614 (1984). A finding of fact is clearly erroneous when, through our review of the evidence, we are left with the definite and firm conviction that a mistake has been committed. *United States v. Singh*, 363 F.3d 347, 354 (4th Cir. 2004).

## III.

### A.

The grand jury is an ancient institution and an integral part of our constitutional heritage, which came "to this country with the common law." *United States v. Mandujano*, 425 U.S. 564, 571 (1976). The grand jury has traditionally been understood to be both a sword and a shield but, as has been observed, it "earned its place in the Bill of Rights by its shield, not by its sword." *United States v. Cox*, 342 F.2d 167, 186 (5th Cir. 1965) (Wisdom, J., concurring). As Justice Powell aptly emphasized, the grand jury is responsible for both authorizing criminal prosecutions when probable cause exists and ensuring "the protection of citizens against unfounded criminal prosecutions" when probable cause is lacking. *United States v. Calandra*, 414 U.S. 338, 343 (1974).

The grand jury, in carrying out its investigative function, has broad authority to subpoena witnesses and documents. As the Supreme Court recognized in *Branzburg v. Hayes* in 1972,

> the grand jury's authority to subpoena witnesses is not only historic, . . . but essential to its task. Although the powers of the grand jury are not unlimited and are subject to the supervision of a judge, the

longstanding principle that the public . . . has a right to every man's evidence, except for those persons protected by a constitutional, common-law, or statutory privilege, . . . is particularly applicable to grand jury proceedings.

408 U.S. 665, 688 (1972) (internal quotation marks omitted).

## B.

Before turning to our assessment of the issues presented in this appeal, it is appropriate to succinctly review certain of the pertinent facts and procedural points. First of all, this proceeding does not concern any claim of privilege asserted by Doe — it deals only with the Congressman's claim of a Fifth Amendment act of production privilege. Second, we are not concerned with the Custodian Subpoena directed to and served on the Congressman, as that subpoena has been quashed by the district court. *See* Opinion 21. Third, the records requested by the Custodian Subpoena and the Doe Subpoena are materially identical, and any assertion that the efforts to identify and gather documents were directed to the Custodian Subpoena only is both factually and legally irrelevant. *See supra* note 5. Finally, the Fifth Amendment privilege being invoked is that of the Congressman only, and it is directed to the Doe Subpoena only.

## C.

### 1.

The Congressman maintains, in connection with the Opinion and Order of May 4, 2006, that the district court erred in ruling that Doe's production to the grand jury of the Doe Materials and the Staff Materials, pursuant to the Doe Subpoena, does not violate his Fifth Amendment privilege. At its essence, the resolution of the Congressman's appeal turns on whether his Fifth Amendment privilege applies to Doe's pro-

duction of the Doe Materials and the Staff Materials. If it applies, Doe is barred from producing those Materials to the grand jury. If, on the other hand, the Congressman's claim of privilege is rejected, Doe is obliged to produce both the Doe Materials and the Staff Materials.[14] With this predicate in mind, we turn to our assessment of the Congressman's Fifth Amendment contentions.

a.

As a general proposition, the burden of establishing that the Fifth Amendment privilege applies in a particular setting is on the party asserting it. *See United States v. Wujkowski*, 929 F.2d 981, 984 (4th Cir. 1991). The Fifth Amendment privilege is purely personal, and it applies only to natural individuals. *See United States v. White*, 322 U.S. 694, 698 (1944). Because it is a personal privilege, it cannot be asserted by a collective entity or the custodian of a collective entity's records. *See Bellis v. United States*, 417 U.S. 85, 88 (1974). In *Bellis*, the Supreme Court held that the records of an orga-

---

[14]The Congressman also contends that, even if his Fifth Amendment privilege does not apply to the Staff Materials, the Doe Subpoena should nonetheless be quashed with respect to the Staff Materials because he did not share possession of them with Doe. Specifically, the Congressman maintains that Doe did not possess or control the Staff Materials, either when the Doe Subpoena was served on her or when the Documents were placed in the locked cabinet in the Chief of Staff's office. Even if Doe lacks possession of the Staff Materials, however, we would be obliged to reject the Congressman's contention as to their production, because he lacks standing to seek to quash a subpoena for documents over which he has no valid Fifth Amendment claim. *See* 9A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 2459 (3d ed. 1998) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought."); *see also Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979) (concluding that movants who had not asserted valid privilege claim lacked standing to seek to quash subpoena duces tecum directed to third party).

nization which has a "recognizable juridical existence apart from its members" are outside the ambit of the Fifth Amendment and not protected by the constitutional privilege. *Id.* at 87 (internal quotation marks omitted). Thus, a custodian of corporate records may not resist a subpoena for such records on the ground that the act of production would incriminate him in violation of the Fifth Amendment, because such a custodian does not hold the records in a purely personal capacity, but only as agent of the collective entity. *See Braswell v. United States*, 487 U.S. 99, 117-18 (1988). On the other hand, because the privilege is a personal one, an individual who operates a business as a sole proprietorship may, in the proper circumstances, assert his Fifth Amendment privilege to bar production of his business records. *See United States v. Doe*, 465 U.S. 605, 612-13 (1984).

The question of whether a congressman, in connection with a grand jury subpoena for his congressional office's records, is entitled to invoke his Fifth Amendment privilege to bar their production appears to be one of first impression in this Court. In pursuing his contention, the Congressman asserts that his congressional office is akin to a sole proprietorship, and that the records thereof fall within the ambit of his Fifth Amendment privilege. The United States Attorney contends, on the other hand, that a congressional office is more akin to a collective entity and that the Congressman is not entitled to successfully interpose his Fifth Amendment privilege to quash the Doe Subpoena.

In the circumstances here, we need not definitively resolve the question of whether a congressional office is a sole proprietorship or a collective entity. The Congressman's contention of error must be rejected because, even if his congressional office is deemed to be a sole proprietorship, he is not entitled to bar Doe from producing the Documents to the grand jury by invoking his Fifth Amendment privilege.[15]

---

[15]We agree with the district court that a congressional office shares characteristics of both collective entities and sole proprietorships. *See*

b.

The circumstances under which a sole proprietor may assert his Fifth Amendment privilege to bar the production of documents in the possession of a third party, in response to a grand jury subpoena, are circumscribed by controlling precedent. In *Couch v. United States*, the Supreme Court was confronted with the question of whether a sole proprietor could assert her Fifth Amendment privilege to bar production, pursuant to an Internal Revenue summons, of records in the possession of her accountant. *See* 409 U.S. 322, 327 (1973).[16] In ruling on this issue, the Court held that, because the documents were in the possession of the proprietor's accountant, there was no element of compulsion as to the proprietor, and the IRS was entitled to subpoena the documents from the accountant. *See id.* at 329. The Court rejected the notion that ownership, rather than possession, marks the boundary of the Fifth Amendment privilege, observing that "possession bears the closest relationship to the personal compulsion forbidden by the Fifth Amendment." *Id.* at 331.

---

Opinion 12. A congressional office is a "creature of the state," is representative by nature, and is subject to the rules and regulations established by the House of Representatives. *See United States v. White*, 322 U.S. 694, 701 (1944) ("The test . . . is whether one can fairly say under all the circumstances that a particular type of organization has a character so impersonal in the scope of its membership and activities that it cannot be said to embody or represent the purely private or personal interests of its constituents, but rather to embody their common or group interests only."). On the other hand, as the record reflects, a congressman leases office space and vehicles for official use in his individual name, and he is personally responsible for any expenditures exceeding the allowance provided by the House.

[16]Although the *Couch* case involved an Internal Revenue summons and not a grand jury subpoena, the analysis of whether a Fifth Amendment privilege can be invoked to preclude documents from being produced by another is the same in both contexts. *See, e.g.*, *In re Grand Jury Subpoena Duces Tecum Dated May 29, 1987*, 834 F.2d 1128, 1131-33 (2d Cir. 1987) (applying *Couch* analysis to grand jury subpoena).

The Court thus recognized and applied the general rule that, because actual possession of documents bears the most significant relationship to Fifth Amendment protections against personal compulsion, compelling the production of documents in possession of a third person generally does not contravene the Fifth Amendment. *See id.* at 333. The *Couch* Court recognized, however, a possible exception to this rule, observing that "situations may well arise where constructive possession is so clear or the relinquishment of possession is so temporary and insignificant as to leave the personal compulsions upon the accused substantially intact." *Id.*; *see also United States v. Jones*, 630 F.2d 1073, 1079 (5th Cir. 1980) ("Constructive possession of personal records for purposes of asserting the privilege against self-incrimination exists only where the [person asserting the privilege] has placed papers in the hands of another person or entity for custodial safekeeping, thereby, retaining the right to immediate possession though not having actual possession." (internal quotation marks omitted)).

As a general proposition, the courts have justifiably applied the so-called *Couch* exception (that is, the notion that a person may invoke his personal Fifth Amendment act of production privilege to bar third persons from producing documents) in a very limited manner — only to those situations where the person from whom production is sought has such an attenuated possessory right in the documents that the person claiming the privilege retains exclusive constructive possession of them. Importantly, the courts have consistently rejected application of the *Couch* exception in circumstances, such as those in this appeal, where an employer shares control, use, or creation of documents with his employee. *See In re Grand Jury Investigation No. 89-4-8881-J*, 921 F.2d 1184, 1189 (11th Cir. 1991) (holding that lawyer could not assert Fifth Amendment privilege to preclude secretary from delivering subpoenaed documents to grand jury where secretary had prepared and maintained records); *Grand Jury Subpoena Duces Tecum Dated May 29, 1987*, 834 F.2d 1128, 1133 (2d Cir. 1987) (upholding subpoena where administrative assistant had

nearly exclusive responsibility for maintaining documents and owners "had no more than occasional and casual contact with the materials in question"); *In re Grand Jury Proceedings (Manges)*, 745 F.2d 1250, 1252 (9th Cir. 1984) (rejecting sole proprietor's effort to quash subpoena directed to bookkeeper on basis of Fifth Amendment privilege where bookkeeper actively prepared and maintained ledgers, and observing that *Couch* exception only applies where possession of records by employee is so insignificant or fleeting as to leave incriminating testimonial effects in place); *In the Matter of Grand Jury Empanelled Feb. 14, 1978*, 597 F.2d 851, 862 (3d Cir. 1979) (holding that sole proprietor could not assert Fifth Amendment privilege to quash subpoena served on office manager who had full access to papers and prepared some of them).

Consistent with the foregoing rulings, the Fifth Circuit, in *In re Grand Jury Subpoena (Kent)*, recognized and applied the *Couch* exception, holding that a sole proprietor could invoke his Fifth Amendment privilege to preclude his employee from producing documents pursuant to a grand jury subpoena. *See* 646 F.2d 963, 970 (5th Cir. 1981). There, however, the employee had neither prepared, filed, nor maintained any of the requested documents, and the court found that she merely had access to them, as did other employees. *See id.* at 966, 968. The court thus ruled that the proprietor had retained exclusive possession and control of the subpoenaed documents and that his Fifth Amendment privilege applied to bar their production in response to a subpoena directed to his employee. *See id.* at 970. On its facts, *Kent* is readily distinguishable from the situation posed in the Congressman's appeal.

2.

Having spelled out the legal framework for analyzing a Fifth Amendment privilege claim being invoked in connection with a subpoena for documents directed to an employee of the claimant, we now examine the district court's relevant

factual findings. First, the court specifically found that, although the Congressman had constructive possession of the Doe Materials and the Staff Materials, and could have called for them at any time, he shared such possession with Doe. *See* Opinion 18. Next, Doe had actual possession of the Doe Materials when the Doe Subpoena was served, because she was directly responsible for preparing and maintaining them. *See id.* at 14. In addition, the court found that Doe had constructive possession of the Staff Materials when the Doe Subpoena was served, due to her supervisory authority as Chief of Staff. *See id.* at 14-15. Her possession of the Staff Materials became actual possession when they were placed in the locked cabinet in the Chief of Staff's office. *Id.* at 15 n.18. Finally, the court found that Staff Members 2 and 3 had actual possession of the Staff Materials because the preparation and maintenance thereof was their responsibility. *Id.* at 18. As further explained below, we have carefully considered each of these findings and, on this record, readily conclude that none is clearly erroneous.

Doe's evidence provided ample support for the district court's finding that she and Staff Members 2 and 3 had actual possession of the Doe Materials and the Staff Materials, respectively. The Staff Materials were located in the hard drives or files of Staff Members 2 and 3, and the Doe Materials were located in the files and computer of the Chief of Staff. The evidence also warranted the court's determination that Doe acquired actual possession of the Staff Materials when they were placed in the locked cabinet in her office. Although the United States Attorney expressed concern about the integrity and security of the Documents after they were copied, he did not request that they be placed in Doe's possession, and his assent to House Counsel's decision to lock them in Doe's cabinet was merely that — assent. *See* Opinion 15 n.18. In ruling against the Congressman on this point, the court found:

> [a]lthough the government did express concern about security of the documents, it was House Counsel —

not the government — who decided to lock the documents in Doe's [cabinet]. Rather, the government merely assented to House Counsel's decision in this regard after House Counsel refused to have the responsive documents Bates-stamped.

*Id.*

Furthermore, the evidence supported the district court's finding that Doe had constructive possession of the Staff Materials because of her supervisory authority in the Congressman's office. As Chief of Staff, she was the most senior member of the Congressman's Washington staff, and was responsible for running the office and overseeing its nine employees, including Staff Members 2 and 3. Working with those Staff Members, Doe identified and gathered the Documents, including the Staff Materials and the Doe Materials. Although Staff Members 2 and 3 generated and kept their own files, Doe actively participated in matters on which they worked, and she was regularly required to obtain and use the materials created and maintained in their files. Put simply, we are not, on this record, left with the "definite and firm conviction" that the district court made a mistake in any of its relevant findings.

3.

Finally, the district court properly applied the controlling legal principles to the pertinent facts. As we have explained, the Fifth Amendment act of production privilege cannot — under the governing principles of *Couch* — be successfully invoked by the Congressman with respect to the relevant Materials sought by the Doe Subpoena, if Doe also had possession of those Materials. Because the court did not err in finding that Doe had possession of both the Doe Materials and the Staff Materials, it also did not err in ruling that the Congressman was not entitled to invoke his Fifth Amendment privilege to bar Doe's production of those Materials.

IV.

Pursuant to the foregoing, we affirm the Order of May 4, 2006 compelling Doe to produce to the grand jury the Doe Materials and the Staff Materials sought by the Doe Subpoena.

*AFFIRMED*

GREGORY, Circuit Judge, concurring in the judgment:

I am mostly in agreement with the majority decision and I vote to affirm the ruling of the district court, albeit on slightly different grounds. I write separately to discuss whether Doe had constructive possession or control over Staff Member 3's files because of Doe's supervisory authority and whether Doe gained actual possession of the Staff Materials upon their transfer to her cabinet on September 16, 2005.

I.

The majority opinion sets out the facts relevant to this appeal. However, there are additional facts that clarify the relationship between Doe and Staff Member 3. First, although Doe described Staff Member 3 as "her deputy chief of staff," Doe noted that Staff Member 3 was responsible for budget and procurement issues for the Congressman's office, and served as his scheduler and "sort of executive secretary." J.A. 165. When noting that all staff members keep their own files, Doe commented specifically that Staff Member 3 "keeps all of her own records and she helps to maintain the congressman's records." J.A. 180. Before she could explain further, the United States Attorney interrupted Doe with an unrelated question. J.A. 180. At a meeting between Doe, Staff Members 2 and 3, House Counsel, and the Congressman's counsel, Doe commented on the methodology for gathering responsive documents:

> [W]e were going to . . . look through the e-mail, . . .
> we were going to look through hard files, we were
> going to search the computer, . . . [Staff Member 3]
> was going to look through the papers on the con-
> gressman's desk and in his files and she was going
> to search his e-mail . . . . She was going to look at
> files left on the server from other staffers who had
> left.

J.A. 178-79.

Except for one set of documents located on Doe's com-
puter, all responsive documents were found in the files of
Staff Members 2 and 3. J.A. 176. Indeed, Staff Members 2
and 3 "were the only ones with some sort of material knowl-
edge about what these documents were and had some idea of
how to find them or where to find them." J.A. 170. In addition
to the documents collected in the Congressman's office, Doe
testified that Staff Member 3 "sort of reminded us all that
there is an official archive for each member's office," leading
to a search of that archive for responsive documents. J.A. 195.

## II.

## A.

The majority concludes that Doe had "constructive posses-
sion of the Staff Materials because of her supervisory author-
ity in the Congressman's office." With regard to the materials
in the files of Staff Member 2, I agree with this conclusion.
With respect to the files of Staff Member 3, however, this
conclusion ignores evidence that Doe did not have the same
(or greater) access as Staff Member 3 to certain documents
and that Staff Member 3 functioned as the Congressman's
executive secretary, and was not supervised by Doe. The
United States Attorney bears the burden of proof on the initial
inquiry—that of Doe's possession, custody, or control of the
Staff Materials—and, on this record, has not carried this bur-

den with respect to the files of Staff Member 3. Accordingly, I conclude that Doe did not have possession, custody, or control over the files of Staff Member 3.

As "[t]he words 'possession' and 'custody' are . . . superfluous in view of the use of the term 'control,' which is an all-inclusive word," the United States Attorney need only demonstrate that Doe had control over the documents in question. *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 512 n.52 (4th Cir. 1977). "Control is defined as the legal right to obtain documents upon demand." *United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989). This legal right must include "access to the subpoenaed documents in the ordinary course of business." *U.S. Int'l Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 254 (D.C. Cir. 2005).

The majority concludes that Doe had control over Staff Member 3's files because Doe's statements to the Grand Jury on October 6, 2005 indicated that Doe was the senior staff member, actively participated in matters on which other staff members worked, and was regularly required to use their files, although each staff member kept separate files. Despite the assertion of the district court and the majority that Doe had regular access to Staff Member 3's files, there is no evidence of that fact in Doe's grand jury testimony.

Based on the limited evidence about the day-to-day functioning of the Congressman's office, the United States Attorney has not met its burden of proof that Doe had access to Staff Member 3's documents in the ordinary course of business. While it is true that Doe characterized herself as the lead staff member in the Congressman's Washington office, she also characterized Staff Member 3 as the Congressman's executive secretary. Both of these statements may be true; Doe may have been the head of the office, exercising supervisory control over other staff members, and Staff Member 3

may have reported directly to the Congressman as an executive secretary.

Staff Members 2 and 3 gathered documents with Doe because they, rather than Doe, were the only ones who knew where the responsive documents were located. In a meeting with the Congressman's counsel, Staff Member 3, not Doe, was charged with the task of gathering documents from the Congressman's desk and computer, lending support to the conclusion that Staff Member 3 reported directly to the Congressman. In addition, in that same meeting, Staff Member 3 was charged with the task of gathering responsive documents from the electronic files of former staffers. Indeed, Doe was not aware of the existence of an off-site archive containing materials from the office until Staff Member 3 mentioned the archive. Given this evidence, and the lack of any evidence that Doe routinely supervised, or accessed the files of, Staff Member 3, the United States Attorney has not carried its burden of proof to demonstrate that Doe had access to Staff Member 3's files in the ordinary course of business.[1] Accordingly, I conclude that Doe did not have possession, custody, or control over these files.

---

[1]The United States Attorney had ample opportunity to develop the record with regard to the functioning of the Congressman's office during Doe's grand jury appearance. For example, when Doe testified that she had "overall administrative responsibility" for the Congressman's office, "oversee[ing] employees in the larger sense," but that Staff Member 3 functioned as "sort of [the Congressman's] executive secretary," the United States Attorney did not ask Doe to clarify what she meant by overall responsibility or the chain of authority within the office. J.A. 164-66. Similarly, while describing the filing system of the office, and commenting specifically on Staff Member 3's practice of "keep[ing] all of her own records and . . . help[ing] to maintain some of the congressman's records," Doe was interrupted by the United States Attorney with an unrelated question. J.A. 180.

## B.

Having established that Doe did not have possession, custody, or control over the documents in the files of Staff Member 3, I turn to the question of whether the Congressman has a valid Fifth Amendment privilege with respect to the materials in question. Because the Congressman is challenging a third-party subpoena, he only has standing to challenge Doe's subpoena to the extent that he has a valid privilege or right with respect to the documents in question. The only such privilege or right claimed by the Congressman is the Fifth Amendment right against self-incrimination.

On the Fifth Amendment question, I agree with the majority that the exception announced in *Couch v. United States*, 409 U.S. 322, 327 (1973), does not apply to the instant case. Doe and Staff Members 2 and 3 possessed the responsive materials in their work files or on their computers. There is no evidence that the Congressman restricted any staff member's access to, or use of, the responsive documents in any manner. *Cf. In re Grand Jury Subpoena (Kent)*, 646 F.2d 963, 969 (5th Cir. 1981) (quashing subpoena where employee had mere access to records, rather than control thereof); *United States v. Guterma*, 272 F.3d 344, 346 (2d Cir. 1959) (quashing subpoena where trustee had possession of locked safe containing documents, but was never given access to, or ownership of, safe); *Schwimmer v. United States*, 232 F.2d 855, 860-61 (8th Cir. 1956) (owner of documents was entitled to make privilege argument where documents were on premises of third party who was mere naked possessor without having control over documents). Indeed, Staff Member 3 gathered responsive documents from the Congressman's own files, electronic archives of former employees, and an off-site archive. The breadth of the search for responsive documents undertaken by Doe and Staff Member 3 demonstrates the extent to which they had physical possession over most of the responsive documents, as well as authority to obtain those not in their immediate possession. Such broad ability to use and gather

documents goes well beyond the mere access or naked possession discussed in *Kent*, *Guterma*, or *Schwimmer*. In sum, as the majority correctly concludes, courts have repeatedly rejected the application of the *Couch* exception in cases where an employer does not restrict employee access to, or use of, documents in the normal course of business. The cases cited by the majority establish clearly that the Congressman does not have a Fifth Amendment privilege in either the Doe or Staff Materials.

The Congressman's standing as an intervenor in this proceeding, and our exercise of appellate review at this stage, is predicated upon his assertion that compelling Doe to comply with the subpoena at issue violates his Fifth Amendment privilege.[2] *See, e.g.*, *United States v. Jones*, 696 F.2d 1096, 1071 (4th Cir. 1982) (allowing third party immediate appeal of motion to quash when third party asserts privilege in the requested documents); *In re Doe*, 662 F.2d 1073, 1076 (4th Cir. 1981) (allowing third party immediate review of subpoena to protect asserted work-product doctrine materials). Because the Congressman's Fifth Amendment claim fails, he cannot obtain relief on this appeal. The Congressman cannot quash the Doe subpoena, even on the basis that Doe lacked possession, custody, or control over the documents in Staff Member 3's files and was therefore not a proper respondent to the subpoena for those documents. *Cf. United States v. Idema*, 118 Fed. App'x 740, 744 (4th Cir. 2005) ("Idema has failed to make any showing that he has a personal right to, or

---

[2]This is not to say that the Congressman could not satisfy the standing requirement to challenge the Doe subpoena based on another right or privilege. *See, e.g.*, *In re Grand Jury*, 111 F.3d 1066, 1073-74 (3d Cir. 1997) (listing cases where third parties have standing to quash subpoena on basis of various legally cognizable interests in the documents sought). In this case, however, the Congressman has maintained only a Fifth Amendment argument. Thus, his standing before this court, and our jurisdiction to consider this appeal, depends solely upon a finding of a Fifth Amendment interest in the subpoenaed documents. *See* S.J.A. 5-10 (Motion to Intervene on Behalf of the Congressman).

privilege in, the information being sought in the subpoenas. Thus, he lacks standing to contest whether the subpoenas were properly issued . . . ."). Consequently, I must agree with the majority to affirm the district court's ruling, on the slightly different grounds discussed above and with the reservations discussed below.

## III.

In addition to finding that Doe had constructive possession of the Staff Materials because of her supervisory authority, the majority concludes that the transfer of the Staff Materials to Doe's cabinet on September 16, 2005, resulted in her actual possession of these materials. Even if it is not the sole basis for the majority's conclusion that Doe had possession, custody, or control over the Staff Materials, I feel that this Court should not find actual possession based on the transfer of the materials to Doe's cabinet, when Staff Counsel approved of the transfer to address the United States Attorney's security concerns. I believe that the transfer of the Staff Materials to Doe's cabinet is analogous to the situation in *Stuart v. United States*, 416 F.2d 459 (5th Cir. 1969), and the *Stuart* rule should control.

In *Stuart*, taxpayers under civil investigation by the Internal Revenue Service ("IRS") placed certain tax records with their accountant for the government's convenience, as the taxpayers "worked nights and slept days." *Id.* at 460. Without notice to the taxpayers, the investigation became a criminal one, and the IRS served a summons upon the accountant ordering production of the taxpayers' records. *Id.* at 461. Reversing the district court order enforcing the summons, the Fifth Circuit held that "the records were put in the accountant's custody primarily for the convenience of [the government]" and that "the accountant, was not to process or use them in any way; he was simply their custodial bailee [and] a mere 'naked possessor.'" *Id.* at 462-63 (quoting *Schwimmer*, 232 F.2d at 860-61). Because the taxpayers could have withheld the records

prior to transfer if they had known about the criminal investigation, the court held that the "Government should not gain an advantage because the taxpayers, acting reasonably as human beings and citizens, did it a favor and failed to insist that [the IRS agent] perform her inspection in uncomfortable circumstances and at off-hours." *Id.* at 463.

The *Stuart* rule was applied in *Streett v. United States*, 65 F. Supp. 2d 383 (W.D. Va. 1999), a case presenting similar facts. In *Streett*, the IRS began a tax audit of a married couple, the Streetts, as well as the veterinary practice operated by Mr. Streett. *Id.* at 384. The Streetts granted power of attorney to their accountant and arranged for the IRS to conduct the audit at the accountant's office. *Id.* This location was "the most logical site" for the audit because it would avoid disruption to the veterinary practice, would ensure a more orderly review of documents, and was a shorter drive for the IRS agent than the couple's home. *Id.* Without notifying the Streetts, the IRS decided to proceed criminally and issued a summons to the accountant for the Streetts' records. *Id.* at 384-85. The Streetts filed a motion to quash the summons on the basis of *Stuart* and the Fifth Amendment. *Id.* at 385. The district court granted the motion, reasoning that "[a]lthough some minimal benefits flowed to the Streetts under th[e] [transfer] arrangement, through the avoidance of interruptions to the veterinary practice caused by the audit investigation, the government is undoubtedly the greater benefactor of this arrangement," and that "[b]ecause the government's situation played a large role in getting the documents transferred, they should not be permitted to use the transfer to their advantage." *Id.* at 386.

In this case, the United States Attorney expressed concerns over the security of documents that were potentially responsive to a grand jury subpoena. J.A. 517. As a result of these concerns, House Counsel instructed Doe, the subpoena recipient, to take physical possession of the responsive documents. J.A. 518. Though the United States Attorney did not specifically request that House Counsel place the documents in

Doe's cabinet, that was the only locking cabinet in the office, other than the Congressman's personal office. J.A. 517-18.

The reasoning behind *Stuart* applies in the instant case. *Stuart* does not require that the transfer occur at the insistence of the government; rather, the dispositive inquiry is whether the transfer was effected primarily for the government's benefit. As in *Stuart* and *Streett*, once the files were transferred to Doe's cabinet, she was a mere naked possessor of those files —she was not given any additional rights over them, nor was she to use them in any way. Doe should not be found to be in possession of documents placed in her cabinet as a result of House Counsel's reasonable response to the United States Attorney's security concerns, especially when the cabinet was the only available secure location. I believe that *Stuart* should control the case at bar, and therefore dissent from the majority's conclusion that "Doe acquired actual possession of the Staff Materials when they were placed in the locked cabinet in her office."

## IV.

Because the Congressman shared use and possession of the responsive documents with Doe and the Staff Members, he cannot avail himself of the *Couch* exception and has no Fifth Amendment interest in those documents, insofar as the subpoena for the documents is directed to Doe. As a result, the Congressman cannot challenge the subpoena as defective on the basis that Doe did not have possession, custody, or control over the documents in Staff Member 3's files. Additionally, I believe that *Stuart* forecloses the conclusion that the transfer of Staff Materials into Doe's cabinet resulted in Doe's actual possession of those documents.