PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: GRAND JURY SUBPOENA

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

UNDER SEAL,

        *Intervenor-Appellee,*

      v.

UNDER SEAL,

        *Defendant-Appellant.*

No. 10-4815

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, Senior District Judge.
(310-MS-115)

Argued: March 22, 2011

Decided: June 15, 2011

Before NIEMEYER and DAVIS, Circuit Judges, and
Ronald Lee GILMAN, Senior Circuit Judge of the United
States Court of Appeals for the Sixth Circuit,
sitting by designation.

Affirmed by published opinion. Senior Judge Gilman wrote
the opinion, in which Judge Niemeyer and Judge Davis
joined.

**COUNSEL**

**ARGUED:** Stephen Blake Kinnaird, PAUL HASTINGS JANOFSKY & WALKER, LLP, Washington, D.C., for Appellant. Richard Daniel Cooke, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia; Stephen Matthew Byers, CROWELL & MORING, LLP, Washington, D.C., for Appellees. **ON BRIEF:** Dana J. Finberg, SONNENSCHEIN NATH & ROSENTHAL, LLP, Palo Alto, California; Jeffrey G. Randall, PAUL HASTINGS JANOFSKY & WALKER, LLP, Palo Alto, California; Rhodes B. Ritenour, Christina D. Trimmer, LECLAIRRYAN, PC, Richmond, Virginia, for Appellant. Neil H. MacBride, United States Attorney, Alexandria, Virginia, Brian R. Hood, Assistant United States Attorney, Michael S. Dry, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for the United States. Clifton S. Elgarten, Michael J. Songer, CROWELL & MORING, LLP, Washington, D.C.; Brian C. Riopelle, Rodney A. Satterwhite, MCGUIREWOODS LLP, Richmond, Virginia, for Intervenor-Appellee.

---

**OPINION**

GILMAN, Senior Circuit Judge:

The under seal appellant (Company 1), a foreign company, is appealing the district court's denial of its motion to quash the government's grand-jury subpoenas served on the under seal intervenor (Company 2). The subpoenas seek documents that Company 1 delivered to Company 2 in response to discovery requests that arose during the course of civil litigation between the two companies in the United States District Court for the Eastern District of Virginia. Company 2 has entered this case as an intervenor in support of the government. For the reasons set forth below, we affirm the denial of Company 1's motion to quash the government's subpoenas.

## I. Background

### A. Factual background

In 2007, the government commenced an investigation of a former Company 2 employee who began providing consulting services to Company 1 after his employment with Company 2 ended. The government was looking into the possible theft of Company 2's trade secrets. This inquiry, in turn, led the government to investigate Company 1's use of the proprietary information. The employee ended up pleading guilty in December 2009 to theft of trade secrets, in violation of 18 U.S.C. § 1832, and to obstruction of justice, in violation of 18 U.S.C. § 1512(c).

Company 2 filed suit against Company 1 in early 2009, alleging a number of claims based on the same theft-of-trade-secrets allegations (the Civil Litigation). This separate lawsuit is currently pending before the district court.

The interests of Company 2 and the government are generally aligned in attempting to halt and to seek redress for Company 1's alleged misappropriation of Company 2's trade secrets. Company 2 and the government have therefore cooperated with each other in a number of ways over the course of their respective proceedings. In a January 2009 email, an Assistant United States Attorney informed Company 2's counsel that the government wanted to be as helpful as possible in providing Company 2 with information that the government had obtained in the course of its investigation, but that under the relevant rules and regulations, the government was not able to "carte blanche . . . turn over everything in [its] possession." In this same email, the government informed Company 2 that the government's investigation was "dead." The U.S. Attorney therefore did not see any problem with Company 2 filing its civil complaint.

Company 2 explains that it had delayed filing its civil complaint in compliance with the government's request that Com-

pany 2 defer to the government's criminal investigation. After receiving the government's email, Company 2 forwarded a copy of its civil complaint to the government the day before the complaint was filed. The government also sought Company 2's assistance and advice in the government's investigation. In August 2009, the two parties agreed to meet to discuss the ongoing proceedings. Company 1 claims that with Company 2's assistance and with the information that Company 2 obtained in the Civil Litigation, the government was able to revive its investigation of Company 1 in 2010.

In the summer of 2009, Company 2 and Company 1 entered into a protective order (the Protective Order), pursuant to which materials that were designated as "Confidential" and/or "Confidential—Attorneys' Eyes Only" "shall not be used or disclosed for any purposes other than the litigation of this action." In addition, "Confidential—Attorneys' Eyes Only" documents could be disclosed only to outside counsel and not to the parties themselves.

The Protective Order also provided for the eventuality that one of the parties and/or the protected material might be the subject of a subpoena or other legal process. In such a situation, the subpoenaed party would be required to give prompt written notice to the party that had produced the subpoenaed information within 10 business days of the receipt of the subpoena. The subpoenaed party would also be required to object, to the extent permitted by law, to the production of the protected material.

If the party attempting to obtain the protected material were to "take action" to enforce its subpoena, then the receiving party would "first respond by setting forth the existence of this Order and shall give prompt written notice to the producing party of such action . . . within ten (10) business days of notice of any such action." The party that originally produced the documents would then be afforded 10 business days following its receipt of notice to attempt to prevent compliance

with the subpoena. But the Protective Order did not require any party "to challenge or appeal any order requiring production of confidential information covered by this Order, or to subject itself to any penalties for noncompliance with any legal process or order, or to seek any relief from the Court."

Two subpoenas that the government served on Company 2 to obtain documents that Company 1 produced in the Civil Litigation are at issue. The first subpoena is dated August 14, 2009 and the second one is dated May 21, 2010.

With regard to the first subpoena, the government asked Company 2: "Who should I direct the subpoena to, what address/fax, and how would you like it to read?" Company 2 responded by providing the following wording that was used by the government in seeking Company 1's production of documents to Company 2: "documents produced to [Company 2's] outside counsel . . . on August 11, 2009 by [Company 1's] counsel . . . . Documents were produced pursuant to a discovery production between the parties." Company 2 produced approximately 4,200 pages on August 26, 2009 in response to this subpoena.

In September 2009, the government complimented Company 2 on its quick pace of reviewing Company 1's documents and asked Company 2 the date of its civil-discovery cutoff. Then, in October 2009, Company 2 informed the government that Company 2 had received a specific Company 1 email that the government had asked about. But Company 2 revealed only that it had received this communication and did not disclose the message's contents.

Company 1 produced more documents to Company 2 in early 2010, including documents that were designated as "Confidential" and/or "Confidential—Attorneys' Eyes Only." According to Company 1, Company 2 helped revive the government's investigation by alerting the government to Company 2's early 2010 receipt of Company 1's confidential

documents. The second subpoena, served in May 2010, specifically requested that Company 2 produce Company 1's documents that were marked "Confidential" and/or "Confidential—Attorneys' Eyes Only." Pursuant to the Protective Order, Company 2's outside counsel notified Company 1 of the second subpoena. Company 1 responded by objecting to Company 2's production to the government of the "Confidential" and "Confidential—Attorneys' Eyes Only" documents, and further objected to the production of any and all documents that Company 1 had produced in the Civil Litigation.

Company 2 did not immediately produce any documents in response to the second subpoena, but rather notified the government that Company 2 was required to object to the disclosure of Company 1's confidential materials. The government responded by stating that it was willing to discuss steps to protect sensitive information. But the government also notified Company 2 that the U.S. Attorney's Office would file a Motion to Show Cause if Company 2 failed to produce responsive documents.

Pursuant to the terms of the Protective Order, Company 2 then informed Company 1 that the government was intending to "take action" against Company 2 if Company 2 did not produce the subpoenaed documents. Company 2 further notified Company 1 that if Company 1 did not take action within 10 days to prevent Company 2's disclosure, then Company 2 would be permitted to fulfill its legal duty to comply with the government's subpoena. Although Company 2 did not itself have access to the "Confidential—Attorneys' Eyes Only" documents, it explained to Company 1 that Company 2 could still comply with the subpoena through its outside counsel, who did have access to the documents. Company 2 also questioned Company 1's position that Company 2 should not produce even nonconfidential Company 1 documents.

## B. Procedural background

On June 21, 2010, Company 1 filed its Motion to Quash the Subpoenas in the district court. The court stayed Company 2's compliance with the subpoenas pending its decision on Company 1's motion. On July 2, 2010, Company 2 intervened and filed a Statement of Position as Subpoenaed Party in support of the government's ability to obtain the subpoenaed documents.

In response, Company 1 argued that the government should not have been allowed to obtain Company 1's documents from Company 2 because the government was improperly involved in the Civil Litigation between the two companies. Company 1 also argued that allowing Company 2 to give Company 1's documents to the government would violate the Protective Order.

In its request for relief, Company 1 petitioned the district court to order the government to return any documents that Company 2 produced pursuant to the first subpoena and to preclude the government from utilizing or reviewing such documents. Company 1 also requested a closed evidentiary hearing to determine the extent of Company 2's interaction with the government.

The government and Company 2 argued in response that the government was not involved in the Civil Litigation and that its interactions with Company 2 were in furtherance of the government's independent criminal investigation. Company 2 also argued that the grand jury's subpoena power trumps the Civil Litigation's Protective Order.

On July 26, 2010, the district court ruled that the government's interactions with Company 2 were not improper. Company 2 was found to have independently engaged in the Civil Litigation to further its individual interests. And the government's communications with Company 2 were determined to

be part of the government's attempt to redress Company 2's victimization by a former employee who had pleaded guilty to stealing Company 2's trade secrets.

The court also ruled that the subpoenas trumped the Protective Order. Company 1's motion to quash and its motion to keep the court's stays in place pending appeal were subsequently denied. With the stays lifted, Company 2 became free to comply with the subpoenas.

Company 1 timely appealed the judgment of the district court. In its request for relief, Company 1 asks us to reverse the district court's decision and to remand the case for entry of a judgment requiring the government to return and/or destroy any Company 1 documents that the government has received. It also seeks to prevent the government from using those documents against Company 1.

## II.  Discussion

We review the district court's denial of a motion to quash a subpoena under the abuse-of-discretion standard of review. *In re Grand Jury Subpoena John Doe, No. 05GJ1318*, 584 F.3d 175, 182 (4th Cir. 2009). Under this standard, the district court's rulings of law are reviewed de novo and its factual findings are reviewed under the clear-error standard. *Id.*

Rule 17(c)(2) of the Federal Rules of Criminal Procedure provides that the district court "may quash or modify [a] subpoena if compliance would be unreasonable or oppressive." The grand jury's "investigative powers are necessarily broad" because it serves the important dual roles of "determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions." *Branzburg v. Hayes*, 408 U.S. 665, 686-88 (1972). "Thus, in the context of a grand jury subpoena, the longstanding principle that the public has a right to each person's evidence is particularly strong. Absent a compelling

reason, a court may not interfere with the grand jury process." *In re Grand Jury Proceedings #5 Empanelled January 28, 2004*, 401 F.3d 247, 250 (4th Cir. 2005) (citation omitted). And a party attempting to quash a subpoena bears the burden of rebutting the "presumption of regularity" that attaches to a grand jury's proceedings. *See United States v. Brothers Const. Co. of Ohio*, 219 F.3d 300, 314 (4th Cir. 2000).

On the other hand, the grand jury's investigatory powers are not unlimited, and "what is reasonable depends on the context." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 299 (1991) (internal quotation marks omitted). A subpoena may be unreasonable or oppressive under Rule 17(c) if it is "irrelevant, abusive or harassing, overly vague, or excessively broad," or "if compliance is likely to entail consequences more serious than even severe inconveniences occasioned by irrelevant or overbroad requests for records." *In re Grand Jury, John Doe No. G.J. 2005-2*, 478 F.3d 581, 585 (4th Cir. 2007) (citations and internal quotation marks omitted).

## A. Rule 17 of the Federal Rules of Criminal Procedure and the Mutual Legal Assistance Treaty (MLAT)

Company 1 argues that the government subverted the limitations on obtaining documents from foreign parties that are imposed by Rule 17 of the Federal Rules of Criminal Procedure and the MLAT between the United States and Company 1's home country. Rule 17(e)(2), in combination with 28 U.S.C. § 1783, provides that a grand-jury subpoena may be served in the United States or, if the subpoenaed party is a United States national or resident, in a foreign country. Company 1 correctly points out that because it is neither a United States national nor a resident, Rule 17(e)(2) prevents the government from serving a grand-jury subpoena on Company 1 in a foreign country. *See United States v. Moussaoui*, 382 F.3d 453, 462-63 (4th Cir. 2004) (noting the "well established and undisputed principle that the process power of the district court does not extend to foreign nationals abroad").

Furthermore, Company 1 contends, the use of letters roga-tory—a procedure whereby a court within the United States can make a formal request to a foreign court to serve a sub-poena—is the traditional method for obtaining discovery from a foreign party. *See* 22 C.F.R. § 92.54. Because the power of letters rogatory may be limited by foreign countries, however, this mechanism does not allow for the same breadth and ease of discovery as do the Federal Rules of Criminal Procedure.

The United States has negotiated MLATs with various countries to facilitate legal proceedings involving foreign par-ties without having to resort to letters rogatory. "As their names suggest, these treaties provide for bilateral, mutual assistance in the gathering of legal evidence for use by the requesting state in criminal investigations and proceedings." *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 564 (9th Cir. 2011).

### 1.  *The MLAT*

Company 1 argues that the MLAT between the United States and Company 1's home country replaces the use of let-ters rogatory as the exclusive means for the government to obtain criminal discovery from a party located in that country. But this argument is without force in the present circum-stances because the government did not obtain any discovery from Company 1. Rather, the government served the subpoe-nas on Company 2, seeking documents that were brought into the United States through the Civil Litigation.

Moreover, the MLAT specifically provides that "[t]he Con-tracting Parties may also provide assistance pursuant to any bilateral agreement, arrangement, or practice which may be applicable." (Citation omitted.) In *United States v. Rommy*, 506 F.3d 108, 129 (2d Cir. 2007), the Second Circuit noted that similar treaty language in the MLAT with the Nether-lands, "[b]y its express terms, . . . has no application to evi-dence obtained outside the MLAT process." We agree, and

therefore conclude that the MLAT is not the exclusive means for the government to obtain documents from a party located in Company 1's home country in aid of the government's criminal investigation.

Company 1 has also failed to show that the MLAT gives rise to a private right of action that can be used to restrict the government's conduct. The MLAT explicitly states that it "is intended solely for mutual legal assistance between the Contracting Parties. The provisions of this Treaty shall not give rise to a right on the part of any private person to obtain, suppress, or exclude any evidence or to impede the execution of a request." (Citation omitted.) *See also Rommy*, 506 F.3d at 129 (determining that the defendant had failed to show "that the treaty creates any judicially enforceable individual right that could be implicated by the government's conduct here").

## 2. *Rule 17 of the Federal Rules of Criminal Procedure*

Company 1 next contends that "it is unreasonable for the Government to convert civil discovery mechanisms into a means to circumvent the restrictions on grand jury subpoena powers and the MLAT." It thus claims that the subpoenas are unreasonable under Rule 17(c). Alternatively, Company 1 asks us to create a new procedural rule under our supervisory authority that would prohibit the government from obtaining Company 1's documents in this circuitous manner.

We agree with the general principle that "civil discovery may not be used to subvert limitations on discovery in criminal cases, either by the government or by private parties." *McSurely v. McClellan*, 426 F.2d 664, 671-72 (D.C. Cir. 1970) (citing *United States v. Parrott*, 248 F. Supp. 196, 199--202 (D.D.C. 1965) ("The Court holds that the Government may not bring a parallel civil proceeding and avail itself of civil discovery devices to obtain evidence for subsequent criminal prosecution.")). But, as explained above, the government here did not bring a parallel civil proceeding against

Company 1. Rather, the government subpoenaed documents that were already located in the United States pursuant to discovery initiated by Company 2.

The Ninth Circuit recently decided a factually similar case. There, as in the present case, the government subpoenaed documents that originally had been located outside of the United States but were produced in this country as part of separate civil-discovery proceedings with a private plaintiff. *See In re: Grand Jury Subpoenas*, 627 F.3d 1143, 1144 (9th Cir. 2010). Company 1 relied on the district court's decision in that case, which, in quashing the subpoenas, allowed the government to view, but not copy, the subpoenaed documents. *See In Re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M-07-1827-SI (N.D. Cal. Mar. 29, 2010). Due to the absence of any precedent on point, however, the district court in the *Flat Panel* case explicitly sought appellate guidance.

The Ninth Circuit subsequently reversed the lower court's decision to quash the government's subpoenas. As the Ninth Circuit explained, "[b]y a chance of litigation, the documents have been moved from outside the grasp of the grand jury to within its grasp. No authority forbids the government from closing its grip on what lies within the jurisdiction of the grand jury." *In re: Grand Jury Subpoenas*, 627 F.3d at 1144. The present case is factually similar to the scenario that the Ninth Circuit dealt with in *In re: Grand Jury Subpoenas*, and we believe that the result should be the same.

## B.  Allegations of collusion between Company 2 and the government

Company 1 argues for a different result here because the government allegedly subverted its ordinary criminal-subpoena power by colluding with Company 2 to obtain Company 1's documents, which the government could not have obtained directly from Company 1. According to Company 1, the government "had a role in helping cause the docu-

ments, the foreign-based documents, to be brought . . . to the United States."

Had the government in the present case directed Company 2 to request documents from Company 1 in the Civil Litigation so that the government could then, in turn, subpoena those documents from Company 2, Company 1 would have a basis for arguing that the government had used civil discovery "to subvert limitations on discovery in criminal cases." *McSurely*, 426 F.2d at 671-72. But the district court expressly found that there was no evidence that Company 2 engaged in discovery in the Civil Litigation at the behest of the government. Nor was there "any evidence that the United States played any role in securing the documents of [Company 1] to be produced to [Company 2] in the civil litigation."

Company 2's substantial interaction with the government, as detailed above, including Company 2's assistance to the government with the subpoenas and Company 2's updates regarding its civil-discovery progress, do not show that the government was directing Company 2's civil discovery. Rather, the cooperation between the parties reflects the fact that the government and Company 2 were assisting one another in advancing their independent but shared interests. Company 2, after all, has its own interest in redressing, through the civil-litigation process, the injuries that it alleges were caused by Company 1. We therefore see no basis to hold the district court's factual findings clearly erroneous.

Company 1 attempts to counter the force of these findings by arguing that

> whether the United States gave specific direction to [Company 2] is a red herring. The Government did not need to do so to accomplish its purposes because it . . . *knew* that [Company 2's] civil discovery would reach documents that the Government could not

obtain by a grand jury subpoena . . . or by an MLAT request.

But what the government knew or could have predicted regarding Company 2's independent behavior in the Civil Litigation is irrelevant to the propriety of the government's actions. As the district court explained:

> If [Company 2] wishes to make such communications, it is not in any way prohibited from doing that, nor is the United States prohibited from asking for information from a victim of crime just because the victim is a corporation. Indeed, the United States is obligated, in enforcing the law, to request such information as is reasonably necessary to make it able to enforce the law.

So long as the government did not improperly collude with Company 2 to obtain documents from Company 1, the government cannot be said to have used the civil-discovery process to subvert the limitations on its criminal-discovery powers. *See In re: Grand Jury Subpoenas*, 627 F.3d 1143, 1144 (9th Cir. 2010) (reversing the district court's quashing of grand-jury subpoenas because "[n]o collusion between the civil suitors and the government has been established"). The district court thus did not abuse its discretion in determining that the subpoenas passed muster under Rule 17. And Company 1 has provided no basis for us to craft a new procedural rule in support of its position.

## C.    Company 1's request for an evidentiary hearing

At the very least, Company 1 argues, it should have been afforded an evidentiary hearing to determine whether the government and Company 2 improperly colluded to bring Company 1's documents to the United States. But Company 1 has already presented to the district court substantial communications between the government and Company 2, and the court

has determined that none of these communications show any improper behavior by either party.

Company 1 obtained these communications through discovery in the Civil Litigation. It did not obtain, however, communications between Company 2 and the government that were deemed to be work-product materials. Company 1 argues that these additional communications might show collusion between Company 2 and the government. But Company 1 has not demonstrated how it could overcome the work-product protection that the district court has already ruled applies to these remaining documents.

In sum, we find no clearly erroneous rulings by the district court in resolving the factual issue regarding the nature of Company 2's interaction with the government. Company 1 has thus failed to show that this issue merits any further investigation or an evidentiary hearing. *See In re Grand Jury Subpoena*, 920 F.2d 235, 241 (4th Cir. 1990) (ruling that there was no need for an evidentiary hearing, relying on the district court's factual determination that there was no basis for believing that IRS civil agents had access to the materials at issue).

## D.   The concern for protecting foreign parties

Another of Company 1's arguments is that the subpoenas are unreasonable because allowing the government to obtain a foreign party's documents from civil proceedings in the United States will damage the rights of foreign sovereigns and foreign parties. According to Company 1, allowing this practice will force foreign parties to object to civil–discovery requests and, if such objections are denied, to face sanctions if the party ultimately refrains from producing documents in the United States.

But Company 1 fails to recognize that the risk it faces by engaging in civil litigation in the United States is not unique

to foreign parties. Rather, materials generated in civil litigation are generally available for use in future criminal prosecutions. For example, "[u]ncoerced testimony given in a civil action may provide important and relevant information to a grand jury investigation." *In re Grand Jury Subpoena*, 836 F.2d 1468, 1475 (4th Cir. 1988) (holding that a civil protective order did not prevent a grand jury from obtaining civil depositions). That Company 1 might face adverse criminal consequences as a result of its participation in the Civil Litigation is therefore not the type of extraordinary circumstance that Company 1 claims.

## E.    The Protective Order does not trump the subpoenas

Company 1 also highlights throughout its brief that the Protective Order between itself and Company 2 prohibited Company 2 from disclosing Company 1's confidential documents to third parties. But because Company 1 acknowledges that the subpoenas enabled the government to overcome this limitation, Company 1's repeated references to the terms of the Protective Order serve largely as a distraction from the issues involved in this case. As the district court correctly ruled, there is a per se rule in the Fourth Circuit favoring the "enforcement of a grand jury subpoena despite the existence of an otherwise valid protective order." *Id.* at 1477.

Company 2 was also careful to comply with the Protective Order. Company 1 notes the fact that, prior to receiving the second subpoena, Company 2 notified the government about the existence (but not the contents) of a specific confidential email. In addition, Company 1 alleges that Company 2 alerted the government in February 2010 to Company 2's receipt of Company 1's confidential documents.

But Company 1 offers no evidence that Company 2 actually disclosed the contents of protected material in these communications. Company 2 instead waited for the government's second subpoena, initially refused to produce the documents

that the government requested in that subpoena, and gave Company 1 the opportunity to prevent compliance with the subpoena by notifying Company 1 of the government's document request.

## F. The Department of Justice's (DOJ's) internal guidelines

Finally, Company 1 claims that the government violated the DOJ's internal guidelines by failing to obtain the proper approval before subpoenaing Company 1's confidential information that was in the control of Company 2's outside counsel. But Company 2 correctly notes that these guidelines explicitly state that they "are set forth solely for the purpose of internal DOJ guidance. They are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party." United States Attorney Criminal Resource Manual § 9-13.410(G); *see also United States v. Cooks*, 589 F.3d 173, 184 (5th Cir. 2009) ("Several sister circuits have held that the Department of Justice guidelines and policies do not create enforceable rights for criminal defendants.").

Company 2 also correctly notes that the DOJ guidelines deal with the disclosure of an attorney's documents that might hinder the attorney-client relationship because the documents "relat[e] to the attorney's representation of a client." United States Attorney Criminal Resource Manual § 9-13.410(A). The subpoenas, however, do not seek documents that deal with Company 2's relationship with its own counsel. Rather, in attempting to obtain documents concerning Company 1's internal operations, the government requested documents that happened to be in the possession of Company 2's outside counsel because the Protective Order calls for them to be shielded from Company 2. But these are not the type of attorney-client documents that the DOJ's internal guidelines intend to protect by recommending heightened internal

approval. The guidelines thus do not prevent Company 2's compliance with the subpoenas.

## III. Conclusion

For all of the reasons set forth above, the district court's denial of Company 1's motion to quash is

*AFFIRMED*.